[No. 28666.   Department Two.   July 30, 1942.]

KITSAP COUNTY, *Respondent,* v. DOUGLAS T. BUBAR *et al., Appellants.*[1]

*R. W. Miller* and *Marion Garland,* for appellants.

*Frederick B. Cohen* and *Roy A. Holland,* for respondent.

BEALS, J.—Prior to 1930, Kitsap county, through general tax foreclosure proceedings, acquired title to a tract of land, which it owned until 1938. In January, 1935, defendant Douglas T. Bubar was elected assessor of Kitsap county, holding that office at all times herein

[1]Reported in 128 P. (2d) 483.

referred to. During the month of April, 1938, Bubar requested the county commissioners to offer the land here in question at public sale. Thereafter, the commissioners fixed $120 as the minimum sale price for the land, and advertised the property for sale pursuant to law. June 17, 1938, the property was offered for sale, Bubar offered $120 for the property, and the county treasurer declared the property sold to him. In February, 1939, a treasurer's deed was delivered to Bubar, who subsequently sold the timber on the land to Gordon B. Harris, and later the land itself to defendant Paul Schroeder.

February 10, 1941, Kitsap county, as plaintiff, sued Mr. and Mrs. Bubar and Mr. and Mrs. Schroeder, alleging in its amended complaint, which was filed May 5, 1941, the facts above stated, and praying that the title to the property be quieted in the county as against the defendants, and that the county have judgment against Mr. and Mrs. Bubar for the amount which they received for the timber and for the land.

The defendants jointly answered the amended complaint, denying the material allegations thereof, and pleading affirmatively that defendant Bubar purchased the property at a county sale of tax property held pursuant to law, and that defendants Schroeder were bona fide purchasers of the property for value. The defendants further pleaded that the county has no legal capacity to maintain this action.

Plaintiff having replied to the affirmative defenses contained in the answer, the action was tried to the court sitting without a jury, and resulted in findings of fact and conclusions of law in plaintiff's favor, followed by a judgment setting aside the deeds from the county to Bubar and from the latter to Schroeder, adjudging that the defendants have no right, title, or interest in the property, and awarding judgment against defend-

ants Bubar for $105, plaintiff recovering judgment for costs against all these defendants.

From this judgment, the defendants have appealed, assigning error upon the court's rulings that respondent county had legal capacity to maintain the action; that the amended complaint stated facts sufficient to constitute a cause of action; and upon the holding of the court that it is against public policy for a county assessor, during his term of office, to purchase from the county real estate owned by the county as the result of tax foreclosure proceedings. Error is also assigned upon the denial of appellants' motion for judgment in their favor, or in the alternative for a new trial, and upon the entry of judgment in favor of respondent.

■ Appellants argue that the county has no legal capacity to maintain this action, citing the case of *Sasse v. King County*, 196 Wash. 242, 82 P. (2d) 536, in which the plaintiff brought suit to establish a right of redemption in his favor as to a tract of real estate which had been sold to the county in the course of tax foreclosure proceedings, plaintiff also seeking to set aside a sale of the property subsequently made by the county to private parties. It was held that plaintiff had no right to maintain the action, either as enjoying some special right to attack the sales, or as a general taxpayer. There was no question presented concerning fraud in connection with the resale of the property by the county. The court restated the rule that, when a county purchases land at a general tax foreclosure sale, no other purchaser appearing, the county holds the land not in its proprietary capacity, but in trust for the state and certain taxing municipalities, and that a later resale of the land by the county is but a part of the statutory tax collecting process. The case does not support appellants' position that the county has no capacity to maintain this action.

Whether the county owns property in its proprietary capacity or as trustee for certain taxing agencies, is not important. By Rem. Rev. Stat., § 3982 [P. C. § 1468], counties, as bodies corporate, are declared to have capacity

". . . to sue and be sued in the manner prescribed by law; to purchase and hold lands within its own limits; . . . and to do all other necessary acts in relation to all the property of the county."

In the case of *Lincoln County v. Fish,* 38 Wash. 105, 80 Pac. 435, it was held that the right of a county to bring a suit in equity was not restricted by Rem. Rev. Stat., § 950 [P. C. § 8393], by which counties are vested with authority to maintain certain specified actions at law.

The relationship of respondent county to the land in question was such that the county enjoyed legal capacity to maintain this action, and appellants' contention to the contrary is without merit.

We shall now consider the question of the validity of the sale to appellant Douglas T. Bubar. Rem. Rev. Stat. (Sup.), § 11281 [P. C. § 6882-120] (Laws of 1939, p. 768, § 47), referring to tax sales pursuant to foreclosures by a county, includes a provision "that no county officer or employee shall directly or indirectly be a purchaser of such property at such sale." As this section refers only to sales pursuant to tax foreclosure, it does not apply to the situation here presented. It is relevant only as indicating a legislative policy.

The prohibition against the purchase by a county officer of tax foreclosed property was first introduced into the statute by Laws of 1909, chapter 163, § 1, p. 622:

"Provided, That no county officer shall directly or indirectly be a purchaser of such property at such sale."

By Laws of 1925, Ex. Ses., chapter 130, § 120, p. 309, the statute was amended to read as follows:

"Provided, That no county officer or employee shall directly or indirectly be a purchaser of such property at such sale."

No change has been made in the language of the proviso since 1925.

The statute providing for resales by counties of property bid in by the county at general tax foreclosures contains no provision similar to that above quoted.

Rem. Rev. Stat., § 2334 [P. C. § 9061], entitled "Misconduct of public officer," reads in part as follows:

"Every public officer who shall—
"(2) Be beneficially interested, directly or indirectly, in any contract, sale, lease or purchase which may be made by, through or under the supervision of such officer, in whole or in part, or which may be made for the benefit of his office, or accept, directly or indirectly, any compensation, gratuity or reward from any other person beneficially interested therein; .

. .
"Shall be guilty of a gross misdemeanor, . . ."

Respondent argues that this section is applicable to the case at bar, but we find it unnecessary to consider that question, as the case at bar must be affirmed on other grounds.

In the case of *Coughlin v. Holmes*, 53 Wash. 692, 102 Pac. 772, it appeared that, by virtue of certain tax foreclosure proceedings, the treasurer of Spokane county, March 20, 1903, sold a tract of land to Emmett H. Holmes, he at that time being a deputy in the office of the county treasurer, and that, thereafter, and while Mr. Holmes was still holding the position referred to, a tax deed was issued to his wife, Lulu A. Holmes. Thereafter the plaintiff, Bartholomew Coughlin, the record owner of the property, instituted the action re-

ferred to, seeking to quiet his title to the land against Mr. and Mrs. Holmes. From a judgment in plaintiff's favor, the defendants appealed to this court, contending that the plaintiff had failed to plead or prove a tender of all taxes, penalties, interest, and costs, and that, without such a tender, the plaintiff could not recover. This court held that appellants' argument upon the point referred to was not well taken, and then said:

"Furthermore, we are of the opinion that the judgment may be sustained upon the ground that the sale of the land by the county treasurer to himself or a deputy in his office is against public policy, and therefore invalid."

While this decision was filed June 29, 1909, a few days after chapter 163, Laws of 1909, became effective, the tax sale which was under attack in the case cited was made long prior to the enactment of the amendatory statute.

Under the common law, the rule was that a public officer conducting a tax sale might not become a purchaser. 3 Cooley on Taxation (4th ed.), § 1447; 61 C. J. 1207, § 1631; 5 A. L. R. 969. This general principle was recognized by this court in the case of *Coughlin v. Holmes, supra.* The legislature has, by the enactment of Rem. Rev. Stat. (Sup.), § 11281, *supra,* greatly extended this common-law principle as to tax foreclosure sales, the statutory prohibition including all county officers and employees, whether the duties of such officers and employees directly pertain to the collection of taxes or not.

The legislature of this state has adopted the policy of prohibiting county employees from engaging in operations which cross the line of county affairs.

An even stronger reason exists for the application of such a policy to the facts of the case at bar than exists in connection with property sold pursuant to a tax foreclosure. At such a sale the purchaser must bid

the full amount of the taxes due. That represents the full extent of the county's interest in the proceeding. Property which is taken over by the county at such sales becomes county property held in trust for the state and various taxing agencies, which profit or lose as the land may be sold for a greater or less sum. *State ex rel. King County Water Dist. v. Stacy,* 10 Wn. (2d) 248, 116 P. (2d) 356. While of course the county commissioners fix the minimum price at which such property may be sold, a sound public policy exists against the allowance of negotiations of one county officer with others which might result in a profit to the county officer at the expense of the county. Of course, appellant Bubar, as county assessor, was required to fix assessed valuations of land, which valuations might have some bearing upon the supposed valuation of the land here in question. We do not, however, desire to limit our decision to an instance in which a county assessor became the purchaser of tax property. The public policy with which we are concerned extends farther than that.

Few, if any, of the facts in this case, as disclosed by the record, are in dispute. The trial court, after finding the facts leading up to and including the sale to appellant Bubar, found that Bubar sold the timber, logs, etc., located upon the property, to Gordon B. Harris, for a total consideration of $1,086.76, and "that the consideration for said sale included certain indebtedness owing from the said Gordon B. Harris to the defendant Douglas T. Bubar." The court further found that thereafter appellants Bubar, by deed, conveyed the property to appellant Schroeder, for a consideration of one hundred dollars, and that appellants Bubar made a net profit on the above transaction in the amount of $105. After the entry of findings of fact and conclusions of law, the trial court entered

judgment in favor of respondent county and against appellants Bubar, for the sum of $105, and in effect quieted the county's title to the land as against all the appellants. It is difficult from the record to ascertain the basis for the amount for which the court rendered judgment in favor of respondent and against appellants Bubar. Respondent, however, has prosecuted no cross-appeal from the judgment, and appellants urge no argument which requires an analysis of the figures contained in the record. The questions here presented are clear-cut, and of course our decision is confined strictly to those questions.

We are convinced that the judgment appealed from is supported by a sound public policy, which has heretofore been recognized and established by this court by its decision in the case of *Coughlin v. Holmes, supra.* The judgment appealed from is right, and is accordingly affirmed.

ROBINSON, C. J., BLAKE, STEINERT, and JEFFERS, JJ., concur.