Robert D. KEELING, Leroy Johnson, Alan C. Palmer, Carl Campbell, Mike Peterson, Robert Henry Strobl, Don L. McGuire, Dale Lee Dean, Michael Lloyd Page, Glenn R. Crespin, Ray Dwane Rowland, Fred R. Knowles, Wallace A. Irwin, Jr., Donald G. Malone, Wayne C. Smith, William J. Geary, Jr., Roscoe D. Booth, William A. Chamberlain, Individually, Plaintiffs-Appellees,

v.

The CITY OF GRAND JUNCTION, Defendant-Appellant,

and

Lester Eles JOHNSON, William Owen Gaskill, James Erick Hall, Richard Bacher, David William Leist, Robert Elliot Larson, Harry S. Long, Jr., David Russell Schumacher, Jerry D. Hill, Larry Melvin Head, John Charles Jackson, Kenneth I. Wynkoop, Martyn Currie, Ronald P. Maez, Donna May Rowe (Smalley), Theodore Herman Cruz, Steven Thomas Dibsie, Individually, Plaintiffs-Appellees, Cross-Appellants,

v.

The CITY OF GRAND JUNCTION, Defendant-Appellant and Cross-Appellee.

No. 83CA0968.

Colorado Court of Appeals, Div. II.

April 26, 1984.

Rehearing Denied June 7, 1984.

Certiorari Denied Sept. 24, 1984.

Gerald B. Feather, P.C., Gerald B. Feather, Grand Junction, for plaintiffs-appellees.

Gerald J. Ashby, Grand Junction, for defendant-appellant and cross-appellee.

Stephen K. Erkenbrack, Grand Junction, for plaintiffs-appellees, cross-appellants.

BABCOCK, Judge.

This is a consolidated action brought by members of the City of Grand Junction Police and Fire Departments (plaintiffs) for a determination of their status, rights, and obligations under an educational incentive pay program (the program). The City of Grand Junction, a home rule city, (City) appeals from the trial court's adverse determination, posing the following question for review: May a city council terminate an educational incentive pay program and phase out incremental payments earned thereunder in its adoption of a new pay plan for city employees?

The trial court determined that although the City could terminate the program, it had to continue paying educational incentive pay to each individual who had earned the same as long as he remained employed by the city. That determination was incorrect and we therefore reverse.

In 1969, the City initiated an educational incentive pay program for members of the police department which provided for 5% increases in base pay, to a maximum of 15%, when a participant earned a specified number of college credits and accumulated a specified number of years of law enforcement experience. The program was later extended to members of the fire department. After its inception, the program was modified in several respects without objection by members of the police or fire departments.

In 1979, the City adopted a new pay plan for city employees to become effective January 1, 1980. This plan terminated the program and provided that pay increments earned thereunder would be phased out by reducing future pay raises of those who had earned educational incentive pay increases by 5% during each of the succeeding three years. By so doing, the new plan equalized the salaries of all police officers and firemen having similar rank and time in grade within each department without regard to individual educational levels.

■■■ A city council, in the exercise of its legislative power, cannot enter into a contract which will bind succeeding city councils and thereby deprive them of the unrestricted exercise of their legislative power. *City of Denver v. Hubbard,* 17 Colo.App. 346, 68 P. 993 (1902). Among the legislative powers of a city council is the fixing of salaries of city employees. *Denver Police Protective Ass'n v. City & County of Denver,* 665 P.2d 150 (Colo.App. 1983). Therefore, the Grand Junction City Council, being vested with all the legislative power of the City, *Grand Junction City Charter* 42, had the power to adopt a new pay plan setting forth rates of pay for all city employees and terminating the prior program.

Plaintiffs contend, however, that they are entitled to continuing payment of increments earned during the time the program was in effect upon the basis of an alleged contractual obligation or upon the doctrine of promissory estoppel. We disagree.

■■■ One who contracts with a municipality is charged with knowledge of its limitations and restrictions in making contracts. *Colorado Investment Services, Inc. v. City of Westminster,* 636 P.2d 1316 (Colo.App.1981). The existing law at the time and place of the making of the contract, including the city charter, becomes a part of the contract. *Colorado Investment Services, Inc. v. City of Westminster, supra.*

■■■ Charged with knowledge that succeeding city councils are not bound by the legislative acts of their predecessors in setting salaries for city employees, plaintiffs cannot prevail on the basis of contract. Because the fixing of salaries is subject to change and the receipt of a salary is contingent upon continued employment with the City, plaintiffs do not have a vested contractual right in the continuance of a particular rate or method of compensation. *Chicago Patrolmen's Ass'n v. City of Chicago,* 56 Ill.2d 503, 309 N.E.2d 3 (1974);

*Foley v. Consolidated City of Indianapolis,* 421 N.E.2d 1160 (Ind.App.1981); 4 *E. McQuillin, Municipal Corporations* § 12.-196a (3rd ed. 1977 rev. vol.); *see Police Board v. McPhail,* 139 Colo. 330, 338 P.2d 694 (1959).

For the same reasons, plaintiffs could not have reasonably relied upon continuing payments under the program, and therefore, their claims based on promissory estoppel must fail. *Chicago Patrolmen's Ass'n v. City of Chicago, supra; Foley v. Consolidated City of Indianapolis, supra.*

Because of our disposition of the City's appeal, the claims asserted on cross-appeal by the police department that the City cannot terminate the alleged contract with respect to prospective benefits need not be addressed.

The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment in favor of the City.

BERMAN and KELLY, JJ., concur.